### LIVE POULTRY TRANSP. CO. v. LEMAC CARRIERS CO.
### SAME v. RYAN CAR CO.

(Circuit Court, N. D. Illinois, N. D.   October 5, 1910.)

#### Nos. 29,386 and 29,387.

PATENT (§ 328*)—VALIDITY AND INFRINGEMENT—POULTRY CAR.
   The Mudd patent, No. 539,229, for an improvement in poultry cars, while of narrow scope, discloses invention and is valid; also, *held* infringed by the device of the Ryan & Candlin patent, No. 910,865.

In Equity.   Suit by the Live Poultry Transportation Company against the Lemac Carriers Company, and same against the Ryan Car Company.   On final hearing.   Decree for complainant.

Dyrenforth, Lee, Chritton & Wiles (Philip C. Dyrenforth, of counsel), for complainant.

Peirce, Fisher & Clapp (George P. Fisher, of counsel), for defendants.

KOHLSAAT, Circuit Judge.   These suits were brought against the Lemac Carriers Company as alleged user, and the Ryan Car Company as alleged manufacturer, respectively, for alleged infringement, of the device of claims 1 and 2 of patent No. 539,229 in suit, granted to complainant as assignee of Madd, the inventor, on May 14, 1895, for an improvement in poultry cars.   Claims 1 and 2 of the patent are as follows:

   "1. In a poultry car containing coops at opposite sides of an aisle, the upright posts, at the aisle, of the framework of the coops said posts having openings, at which to insert and withdraw the troughs, and troughs supported in the coops to extend lengthwise of and underneath the transverse beams of their framework, substantially as described.

   "2. In a poultry car containing coops at opposite sides of an aisle, the upright posts, at the aisle, of the framework of the coops said posts having openings, at which to insert and withdraw the troughs, shells supported in the coops to extend lengthwise of and underneath the transverse beams of their framework, and troughs removably confined in the shells, substantially as described."

The patent was sustained by Judge Brown in the Circuit Court for the District of Massachusetts in a different record, in April, 1910.

Defendants are operating under patent No. 910,865, granted to' Ryan & Candlin on January 26, 1909, also for an improvement in poul-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

try cars. Various attempts were made in the poultry transportation art, covering a number of years, to provide some available substitute for the old-fashioned chicken coop or crate, which was both a cruel and destructive mode of transportation. Rutz took two patents for improved coops in 1881. Moran took a patent for a poultry car in 1888. On June 19, 1888, W. P. Jenkins invented a poultry car having feed troughs depending from the sides of the coop on hooks. April 8, 1890, J. Nolan invented another poultry car having sliding feed troughs placed in the coop. In 1891 Jenkins & Mudd invented an improvement on the Jenkins poultry cars, directed especially to details not here involved. In 1893 the inventor of the car in suit procured a patent for further improvements in the method of handling feed troughs and aisle doors of coops in poultry cars. This device provides for shields or shells upon which the trough may be advanced or withdrawn from the coop into the car aisle or corridor for purposes of cleansing or replenishing food through an opening, "v," at the inner end of the coop. These shields and troughs protruded into the coop, and there is evidence to show that this was objectionable both as to crowding or wedging of the poultry under the trough, and as to the fouling of the food, etc. Following this latter patent came the patent in suit, which the patentee says "relates more particularly to an improvement in the troughs provided in the coops to contain the food and water for the poultry." He sets out two objects, viz.: (a) To prevent crowding or packing and consequent injury and death of weak poultry; and (b) to prevent stealing of the troughs. A further advantage claimed is the prevention of fowls' roosting above the trough and fouling it. Counsel for complainant add one other advantage obtained by the device of the patent, viz., it causes each trough to be common to two adjoining coops.

All of the claims were rejected by the examiner as wanting patentable novelty over the prior art. On appeal to the examiners in chief, the action of the examiner was reversed; the reason assigned being that the device presented features of practical importance and value to the trade over the existing poultry car arrangements. The examiner held that all Mudd did over the prior art was to hang a trough from one of the transverse beams, make trough insertion in end posts instead of in the door, and rest the trough in shells supported by hangers, one being rigidly secured to the transverse beam, the other pivotally connected to the same beam, and that this did not constitute invention. It will thus be seen that the advance, if any, over the prior art, was entirely in the arrangement of the feed trough and its shell with reference to the coop. He conceived the idea of hanging his shell and trough directly under the crossbeam of the coop and manipulating the same through an opening made in the corner post of the coop. This had not been done before in poultry cars, but was not new in stock feeding devices on and off of cars. Indeed, it was quite old in that art. If the latter was so plainly an analogous use, poultry shippers must have been rather a dull lot not to have sooner taken it up.

Reference is made to the double compartment bird cage taken from Blackston's book of Canaries and Cage Birds of 1880. If this device

may be relied on as in the poultry coop or car art, it still is of no value here. It seems to have almost every disadvantage that Mudd sought to avoid. Blackston himself characterizes it as undesirable, owing to the trouble it requires in order to operate it and its facilities for harboring insects. It is not deemed pertinent.

There does not seem to be much room for startling improvements in this art—only such as grow out of experience. The device of the patent in suit seems to have appealed to the trade—at least it so appears from the record. The patent in suit certainly constituted an advance upon the existing poultry transportation car. Defendants must have so considered it, or they would not have appropriated its ideas even by different methods. Conceding that the improvement is a desirable and needed one, the condition of the art is such that invention may be predicated upon very slight novelty. To say the least, such novelty exists in the present case, and the patent, as to the features discussed, should be and is held to be valid.

Both defendants deny infringement. The Ryan & Candlin patent differs from the patent in suit in various details, but the main differences urged are that: (a) It has no crossbeam under which to hang its trough and shell; (b) it uses a three-rod frame for a rest and guide, upon one of which rods it is slidably saddled, while that of the patent in suit is of sheet metal or the like. Defendants substitute a wire or rod for complainant's crossbeam. The difference is one of size. It is defendant's contention that Mudd's invention, if any, consisted in adapting his trough and shell to his existing device. In a sense this was so. But the crossbeam contributed nothing to the end Mudd had in view. It had no bearing upon the extent of the projection of the trough into the coop. Nor was it an essential feature of the trough and shell support. Any rigid or semirigid crosspiece or other support would have sufficed. True, it may have assisted some in protecting the trough from fouling, being directly over it, but it appears that defendant's wire was just as effective in preventing roosting on the trough. Nor is there any merit in defendant's contention as to difference in the form of the shell. It would not change the character of complainant's shell to cut it out so that three strips remain. They are the same thing—both old. Seemingly for the purpose of avoiding the device of the patent in suit, defendant uses two posts at their corners instead of complainant's one. So far as that arrangement is applicable to the matter under consideration, it is the same thing. To cut out or construct more of an opening than is required cannot be held to constitute a difference.

It seems clear that the charge of infringement is sustained.

It is therefore held that the patent is valid and infringed. A decree may be prepared accordingly.